UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| DANTÉ HAYWARD, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CV607-068 |
| MIKE KILE, Sheriff, DOCTOR SIDNEY JOE MORGAN, KEN KELLY; MARTY MARTINEZ, KAT GRIFFIN, JASON GARLAND, TREVIN MOORE, and GARY WEAVER, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff has filed a complaint pursuant to 42 U.S.C. § 1983. Doc. 1. On October 22, 2007, the Court granted plaintiff leave to proceed *in forma pauperis* on the condition that he return a Prisoner Trust Account Statement form and a Consent to Collection of Fees from Trust Account form within thirty days of the order. The Court informed plaintiff that his failure to return these forms would result in a recommendation that this case be dismissed. Plaintiff has returned the two forms; the case is therefore ready to proceed.

Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321–71, to establish procedures to govern civil complaints filed in federal court by prisoners and other detainees. Among the PLRA's procedures is the requirement for this Court to conduct an early screening in all civil cases of any complaint in which a prisoner seeks redress from a government entity or official. See 28 U.S.C. § 1915A. The purpose of the early screening is to "identify cognizable claims" in the prisoner's complaint and to dismiss any claims that: (1) are frivolous; (2) are malicious; (3) fail to state a claim upon which relief can be granted; or (4) seek monetary relief from a defendant immune from such relief. Id. Similarly, 42 U.S.C. § 1997e(c)(2) allows the Court, under the same four standards for dismissal listed in § 1915A, to dismiss any prisoner suit brought "with respect to prison conditions." Therefore, the Court will examine plaintiff's complaint to determine whether he has stated a claim for relief under 42 U.S.C. § 1983.

I. **BACKGROUND**

Plaintiff, currently an inmate at the Georgia Diagnostic and

Classification Prison in Jackson, Georgia, seeks damages from several law enforcement officials of Screven County and Sylvania, Georgia and from a physician who practices in that community. His well-drafted pro se complaint asserts two related claims: that the officers who arrested him for a parole violation used unnecessary and excessive force, and that he was denied necessary medical care for the serous injuries he sustained during his arrest. Doc. 1 attach. at 1.

A. **The Arrest**

On November 6, 2005, plaintiff and a group of his friends were sitting in a motel room in Sylvania, Georgia. Id. at 2. At approximately 12:30 a.m., Officers Ken Kelly, Marty Martinez, Jason Garland, and Trevin Moore entered the motel room pursuant to a warrant. Id. They approached with guns drawn and ordered the occupants to "freeze." Id. "Plaintiff was ordered to kneel and place his hands on his head." Id. He indicates that he peacefully and immediately complied, but for no apparent reason the arresting officers attacked him. Id. He contends that they beat him and tased him "in excess of ten times." Id. at 3. The taser allegedly burned a "hole in plaintiff's rear end." Id.

## B. Booking and Incarceration

After the arrest, plaintiff was transported to Screven County Jail. Id. Upon arrival, he was searched by Officer Keith Mercer. Id. When plaintiff removed his outer clothing, it became apparent that his undergarments were melted to the skin of his buttocks. Id. Mercer had to forcibly tear the undergarment away from plaintiff's skin. Id. After seeing the extent of the injuries, Mercer told defendant Kat Griffin, an officer on duty, that plaintiff was in need of medical assistance. Id. She "replied that she was too busy and was not about to stop to call medical." Id.

Plaintiff was placed in an isolation cell for the next four days. Id. He claims that though he requested medical attention, he was never examined by any medical staff. Id. Four days later, he was moved from isolation to a cell block. Id. Plaintiff states that his continued requests for medical treatment were ignored. Id. He allegedly filed at least four medical treatment request forms, but he never received a response. Id. at 4. He also requested a grievance form on several occasions, but he was not given one until February 26, 2006, more than three-and-one-half months after the incident. Id.

Approximately fourteen days after he was transferred from isolation to the cell block, plaintiff showed Officer Mosely, a guard on duty, the taser burn on his buttocks. Id. at 3. Mosely gave plaintiff a bandage and said, "that's the best I can do for you and it's up to the Sheriff to approve for you to see medical." Id. Approximately four days later, plaintiff experienced sharp chest, neck, and back pains. He believes the pain resulted from the injuries he received on the night of the arrest. Id. The pain caused him to collapse in his cell. Id. Other inmates informed the jail staff. Id. After the collapse, the guards once again placed plaintiff in an isolation cell and refused him medical treatment. Id. He was allegedly forced to sleep on a "steel bunk with no mattress." Id.

While in the isolation cell, plaintiff complained to Officer Inez, another prison guard. He showed her the taser wound; after seeing the severity of the burn, she called the sheriff at his home to inform him that plaintiff was in urgent need of medical care. Id. The sheriff came to the jail and had plaintiff transported to Dr. Sidney Joe Morgan's office for treatment. Id. Dr. Morgan examined plaintiff, then bandaged him. Id. Before leaving Morgan's office, plaintiff told Dr. Morgan that he was

constantly bleeding and sore; Morgan replied "you haven't died yet . . . you're not gone [sic] die." Id. at 4.

## II. ANALYSIS

### A. Excessive Force

Plaintiff states that Ken Kelly, Marty Martinez, Jason Garland, and Trevin Moore maliciously and sadistically used excessive force during his arrest. Id. Additionally, he claims that Sheriff Kile and Chief Gary Weaver of the Sylvania Police Department are liable for his injuries. Id. at 4-5. He argues that Kile is liable on the excessive force claim for failing to adequately discipline the arresting officers, and that both Kile and Chief Gary Weaver are liable for failing to properly supervise and control those officers. Id. at 4-5.

The Fourth Amendment guarantees freedom from unreasonable searches and seizures, and "encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002); Graham v. Connor, 490 U.S. 386, 393-95 (1989). The Court finds that the facts, as stated by plaintiff and read in a

6

way most favorable to him, state a cognizable claim against the four arresting officers. Plaintiff, however, has not shown how Sheriff Kile or Chief Weaver contributed to the alleged Fourth Amendment deprivation in their official or individual capacities.

First, to the extent plaintiff is suing Kile and Weaver in their official capacities as representatives of the municipality, he has failed to state a claim. "[M]unicipalities and other local governmental bodies are 'persons' within the meaning of § 1983." Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). Therefore, § 1983 actions against them are not completely barred. Section 1983, however, does not provide for causes of action based on vicarious liability or respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978). "Instead, . . . a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Brown, 520 U.S. at 403. A municipal policy that results in "mere negligent protection" of an individual's constitutional rights will not create § 1983 liability. Scott v. Moore, 85 F.3d 230, 233 (5th Cir. 1996), rev'd on other grounds, 114 F.3d 51 (5th Cir. 1997) (en banc). Rather, municipal liability

is appropriate only if the policy is so deliberate that it is the "moving force" behind the constitutional injury. Brown, 520 U.S. at 404.

Nor does a municipality's failure to train its police officers automatically subject it to liability. See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing City of Canton v. Harris, 489 U.S. 378, 387 (1989)). "[O]nly where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights" will a municipality be subject to liability under § 1983 for its failure to train. Id. at 1350 (citing City of Canton, 489 U.S. at 389-91). Claims seeking to assert supervisory liability against sheriffs or other natural persons in their official capacities follow these principles. See Jones v. Cannon, 174 F.3d 1271, 1292 (11th Cir. 1999).

Plaintiff's complaint asserts that the defendants, as the arresting officers' supervisors, are liable for the alleged use of excessive force. Plaintiff does not identify any municipal policy of inadequate police officer training that led to his constitutional injury. Instead, he baldly asserts that the defendants were generally responsible for the arresting officers'

training, which was presumably inadequate, and that the inadequate training led to the unjustifiable assault. Such conclusory allegations point to a claim of respondeat superior, which is not cognizable under § 1983. Polk County v. Dodson, 454 U.S. 312, 325 (1981); Monell, 436 U.S. at 691. It is not enough for plaintiff to say that the municipality has a training program, and that he was injured by an officer trained in the program. A well-designed training program that meets constitutional standards may be violated by officers for their own reasons. Accordingly, some indication of a policy of inadequate training must be pleaded in the complaint.

Second, the claims against Kile and Weaver in their individual capacities are meritless. In order to succeed on a claim of supervisory liability, the plaintiff must demonstrate either that the defendants directly participated in the alleged constitutional deprivations or that there is some other causal connection between the officials' acts or omissions and the alleged constitutional deprivations. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988) (per curiam). Such a causal connection may be established by showing that a supervisory official implemented or allowed to continue an official policy or an unofficially adopted policy or custom under which the violation

occurred. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986); Fundiller v. Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985). Plaintiff must show that the supervisors' knowledge amounted to deliberate indifference to the asserted harm or risk, in that their knowledge was "so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541-42 (11th Cir. 1994) (Kravitch, J., concurring). Plaintiff simply has not alleged that either defendant adopted or approved of any policy or practice which would result in the use of excessive force during arrest. Accordingly, this claim against Kile and Weaver must fail.

**B. Denial of Necessary Medical Care**

Plaintiff argues that Kat Griffin, Dr. Sidney Joe Morgan, and Sheriff Mike Kile were deliberately indifferent to his medical needs. Doc. 1 attach. at 5. Kat Griffin allegedly refused to help him get medical attention upon his arrival at the jail. Id. at 3. Sheriff Kile allegedly failed to intervene when he knew that plaintiff was being denied medical treatment for the alleged injuries. Id. at 4. Finally, the medical attention received from Dr. Morgan was allegedly inadequate. Id. at 3-4.

The Eighth Amendment proscription of cruel and unusual punishment, made applicable to the states by the Fourteenth Amendment's Due Process Clause, imposes a constitutional obligation upon the states to provide necessary medical care to those whom it has incarcerated. Estelle v. Gamble, 429 U.S. 97, 103 (1976); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995); Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989). To state a constitutional claim for failure to provide adequate medical care, a prisoner must show that the prison officials exhibited "deliberate indifference" to his "serious" medical needs. Estelle, 429 U.S. at 104.

Estelle did not elaborate upon the meaning of a "serious" medical need but simply recognized a constitutional requirement to attend to any medical condition that could cause "unnecessary suffering" if left untreated. 429 U.S. at 103. The Eleventh Circuit has defined a "serious" medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (citations omitted), overruled on other grounds by Hope v. Pelzer, 536

U.S. 730, 739 (2002). Although the treating physician, Doctor Morgan, opined that plaintiff's injuries were not serious, several jail officials apparently thought they were. While searching plaintiff during booking, Officer Mercer allegedly told defendant Griffin that plaintiff needed medical treatment. Doc. 1 attach. at 3. Several weeks later, Officer Inez was so alarmed by the severity of the taser burn that she called Sheriff Kile at home. Id. Finally, when he was treated by Dr. Morgan, Morgan's nurse allegedly stated "you need help." Id. Taking plaintiff's assertions as true, all of these witnesses recognized that medical attention was needed due to the seriousness of the injury. Accordingly, plaintiff has successfully alleged a sufficiently serious injury.

Next, the Court must determine if the defendants were deliberately indifferent to plaintiff's serious medical needs. Deliberate indifference requires a showing of "obduracy and wantonness, not inadvertence or error in good faith." Adams, 61 F.3d at 1543 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). The Supreme Court, articulating a more precise definition, has stated that deliberate indifference requires the same mental state as criminal recklessness. "The official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff has successfully alleged that Sheriff Kile and Officer Griffin were deliberately indifferent to his serious medical needs. Plaintiff states that both he and Officer Mercer asked Kat Griffin to provide plaintiff with medical attention, but she "replied that she was too busy and was not about to stop to call medical." Doc. 1 attach. at 3. He also claims that Kile "knew about his situation and [couldn't] care less, [because] his jail don't [sic] cater to inmates." Id. Both of the alleged statements indicate a mental state well beyond mere negligence. Accordingly, plaintiff has stated a claim for denial of necessary medical care on the parts of Griffin and Kile.

Plaintiff's claim against Dr. Morgan, however, fails for two reasons. First, as plaintiff freely admits, Dr. Morgan is a "private practice physician." Doc. 1 attach. at 2. To prevail in a § 1983 action, a plaintiff must establish both a violation of a right secured by the Constitution or the laws of the United States *and* demonstrate that the alleged violation was committed by a person acting under color of state law. Bannum, Inc.

v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990). Plaintiff does not specifically allege in his complaint that Dr. Morgan was acting under color of state law, nor has he furnished any information which would allow the Court to infer that the defendant was a state actor. A physician under contract with a state to provide medical services to state prison inmates acts under color of state law for purposes of § 1983 when undertaking his duties in treating an inmate's health. West v. Atkins, 487 U.S. 42, 54 (1988). However, a private physician unaffiliated with any state institution is not acting under color of state law merely because he provides medical services to a state prisoner. See Harvey v. Harvey, 949 F.2d 1127, 1133 (11th Cir. 1992). Here, plaintiff has failed to allege an essential element of a § 1983 claim.

Second, even if Dr. Morgan is a state actor, plaintiff's claim does not demonstrate deliberate indifference but asserts, at most, a claim of medical malpractice. It is not enough that medical personnel have been negligent in diagnosing or treating a prisoner's condition, since it is clear that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; Harris v.

Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). In fact, care provided to a prisoner need not be "perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980)). Nor does a prisoner's mere disagreement with a prison physician concerning the proper course of treatment entitle him to any relief under § 1983. "[T]he question of whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams, 61 F.3d at 1545 (quoting Estelle, 429 U.S. at 107); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (no recovery under § 1983 for disagreements between patient and doctor about what is medically necessary or justifiable). A § 1983 claim, therefore, "does not lie if a prisoner's complaint is directed at the wisdom or quality of the medical treatment he received in prison, even if that treatment is so negligent as to amount to medical malpractice." Brinton v Gaffney, 554 F. Supp. 388, 389 (E.D. Pa. 1983). Indeed, "even gross negligence" is insufficient to establish liability under § 1983. Miller v. King, 384 F.3d 1248, 1251 (11th Cir. 2004).

Unlike plaintiff's claims against Kile and Griffin, plaintiff asserts no facts suggesting that Dr. Morgan was deliberately indifferent to his medical needs. Morgan actually examined and treated plaintiff. Doc. 1 attach. at 3-4. Plaintiff merely disagrees with the type or extent of the treatment, and such claims fail to establish a constitutional claim.

Finally, although Morgan did not directly physically examine plaintiff regarding his sharp chest pains, the doctor was made aware of them and apparently believed them to be insignificant. Id. Morgan's statement, "you haven't died yet . . . you're not gone [sic] die," given in the context of physical examination and treatment is simply not enough to show deliberate indifference. Id. at 4. Again, Morgan, at most, committed malpractice, which does not rise to the level of a constitutional claim. Brinton, 554 F. Supp.2 at 389. Accordingly, Dr. Morgan should be **DISMISSED** from this law suit.

### C. Prison Grievance Procedures

Plaintiff argues that Sheriff Mike Kile ratified and acquiesced to the unlawful actions of the arresting officers and jail staff by failing to establish proper procedures to ensure that plaintiff's complaints about the use of excessive force and denial of medical care were properly investigated. Doc.

1 attach. at 4. Prison grievance procedures are not constitutionally mandated. Baker v. Rexroad, 159 F. App'x 61, 62 (11th Cir. 2005); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (holding that the Constitution creates no entitlement or access to grievance procedures). Since these procedures are not mandated, they do not create a liberty interest that can give rise to a due process violation. See Baker, 159 F. App'x at 62. Plaintiff's claims relating to the adequacy of prison grievance procedures are without merit.

## III. CONCLUSION

For all of the above reasons, the Clerk is **DIRECTED** to forward a copy of plaintiff's complaint to the United States Marshal for service upon: (1) defendants Ken Kelly, Marty Martinez, Jason Garland, and Trevin Moore for the alleged use of excessive force; and (2) defendants Mike Kile and Kat Griffin for denial of necessary medical treatment. All other claims and parties should be **DISMISSED**.

**SO REPORTED AND RECOMMENDED** this 13TH day of December, 2007.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA