DANTE HAYWARD,

    Plaintiff,

v.

MIKE KILE, Sheriff; KEN KELLY;
MARTY MARTINEZ; KAT GRIFFIN;
JASON GARLAND; and TREVIN
MOORE;

    Defendants.

CIVIL ACTION NO.: CV607-068

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Dante Hayward ("Plaintiff"), who was formerly incarcerated at the Georgia Diagnostic and Classification Prison in Jackson, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983. Defendants Mike Kile, Ken Kelly, Marty Martinez, and Kat Griffin ("Movants") filed a Motion for Summary Judgment. Plaintiff filed a Motion to Deny Movants' Motion for Summary Judgment, and Movants filed a Reply. Plaintiff filed a Surreply. For the reasons which follow, Movants' Motion should be **GRANTED**. For these same reasons, Plaintiff's Motion should be **DENIED**.

## STATEMENT OF THE CASE

Plaintiff contends he was subjected to an excessive use of force during his arrest on November 6, 2005. Specifically, Plaintiff asserts Defendants Ken Kelly and Marty Martinez of the Screven County Sheriff's Department, as well as two (2) officers from the Sylvania Police Department, entered the motel room where he and some friends were sitting. Plaintiff asserts the officers drew their guns and ordered him to get on his

knees and place his hands on his head. According to Plaintiff, he immediately complied with these orders, but the officers assaulted him and tased him more than ten (10) times. Plaintiff contends one of the tasers burned a hole in his rear end. Plaintiff also contends he was taken to the Screven County Jail after his arrest and an officer searched Plaintiff. Once this officer was aware of Plaintiff's injuries, Plaintiff alleges that this officer told Defendant Griffin that Plaintiff needed medical attention. Plaintiff avers Defendant Griffin said she was too busy to call medical. Plaintiff also avers he requested medical attention on several occasions, and his requests were ignored by several officials, including Defendant Kile, the Screven County Sheriff, for several weeks.

Movants assert Plaintiff's excessive force claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994), as well as collateral estoppel and issue preclusion. Movants also assert Plaintiff's deliberate indifference claim fails because he cannot show that he had a serious medical need or that Defendants Griffin and Kile were deliberately indifferent to that need. Movants further assert they are entitled to summary judgment based on the doctrine of qualified immunity.

## STANDARD OF REVIEW

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part[ies are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could

cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving parties bear the burden of establishing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION TO AUTHORITY

I.    **Excessive Force During Arrest**

Movants contend Plaintiff's excessive use of force claim is barred because he pled guilty to the obstruction charges stemming from his November 2005 arrest. Movants state that Plaintiff's excessive force claims are intertwined with his convictions

for obstruction and thus, are barred by Heck. Movants assert that Plaintiff does not claim that the officers used an excessive amount of force after he stopped resisting arrest or that the officers used excessive and unreasonable force to stop his resistance. Rather, Movants assert, Plaintiff claims he complied with the officers' orders and that force was used against him for no reason. Movants allege Plaintiff offers no alternative set of facts which does not conflict with the facts forming the basis of his obstruction convictions. Movants contend that allowing Plaintiff's excessive use of force claim to continue will take away the basis of his criminal convictions for obstruction.

Plaintiff asserts that his excessive use of force claim is not barred by Heck and allowing him to proceed will not demonstrate the invalidity of any outstanding criminal judgment against him. Plaintiff contends that his use of force claim is separate from his obstruction conviction because he only pled "guilty to the time, not the crime" and never admitted he obstructed or resisted officers. (Doc. No. 55, p. 13). Plaintiff also contends that, even if he were challenging his conviction, it would not negate the fact that Movants used an excessive amount of force against him. Plaintiff alleges that Movants used an excessive amount of force before his arrest and that he did not resist or obstruct them in any way.

The Supreme Court has held:

> that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). According to the Heck Court, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Id. at 487. If this is the case, the plaintiff's complaint "must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. A district court must determine whether "plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." Id. (emphasis in original).

Plaintiff pleaded guilty in the Screven County Superior Court to two (2) counts of felony obstructing a police officer, in violation of Official Code of Georgia Annotated, Section 16-10-24(b). (Doc. No. 37-3, p. 2). This statute provides:

> Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer, prison guard, correctional officer, probation supervisor, parole supervisor, or conservation ranger in the lawful discharge of his official duties by offering or doing violence to the person of such officer or legally authorized person is guilty of a felony and shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years.

In pleading guilty to the obstruction charges, Plaintiff indicated he understood, *inter alia*, the charges against him and that he was presumed to be innocent of the charges until proven guilty. (Doc. No. 37-3, p. 2). Plaintiff waived his rights and voluntarily pleaded guilty to these felony obstruction charges. According to Defendant Martinez's Incident Report[1], he received a call from Defendant Kelly that Plaintiff was wanted by the Screven County Sheriff's Department and that there were several warrants against

---

[1] The evidence before the Court, including the transcript of Plaintiff's deposition, indicates that the officers' reports form the factual bases of Plaintiff's guilty plea.

Plaintiff.[2] (Doc. No. 37-6, p. 5). Officers arrived at the Village Green Motel in Sylvania, Georgia, after Plaintiff's car was seen parked at this motel; the officers went to the room Plaintiff was believed to be in, knocked on the door, and announced their presence. The officers were told to come into the room and encountered four (4) people inside the room, including Plaintiff. Defendant Martinez noted that, when the officers attempted to take Plaintiff into custody, he "actively resisted arrest" because he did not comply with the officers' verbal commands, struggled with officers who tried to handcuff him, and kicked his legs out, striking Defendant Kelly in the chest and thigh. (Id. at 6). Defendant Martinez also noted that Defendant Kelly used his Taser X26 without the prongs in an attempt to gain Plaintiff's compliance, but Plaintiff "continued actively resisting" by trying to reach under the bed (where a gun was later found). (Id.) Defendant Martinez stated he was able to get one of Plaintiff's hands cuffed, but Plaintiff broke loose and tried to get under the bed again, despite Defendants Trevin Moore and Kelly trying to hold down Plaintiff. Defendant Martinez stated that he used his Taser M26 with the prongs on Plaintiff, but Plaintiff continued resisting arrest. Defendant Martinez also stated Defendant Moore "capstunned" Plaintiff in an attempt to prevent Plaintiff from reaching under the bed. (Id. at 7). Defendant Martinez also stated he and the other officers were able to get Plaintiff fully under control only when Defendant Jason Garland struck Plaintiff in the back and thigh area with his asp baton. (Id., see also id. at 2-3, ¶ 12).

---

[2] Defendant Martinez stated in his Affidavit that Plaintiff had several outstanding warrants from the Screven County and Jenkins County Sheriff's Departments, as well as the Sylvania Police Department. Defendant Martinez also stated that he understood the Georgia Bureau of Investigations wanted to question Plaintiff about his possible involvement in an armed robbery. (Doc. No. 37-6, p. 1, ¶ 5).

In his Affidavit, Defendant Kelly states that Plaintiff kicked him in the ribs and he was knocked to the floor as the other officers tried to gain control of Plaintiff's hands. Defendant Kelly states he saw a handgun under the bed while he was on the floor and within Plaintiff's reach. Defendant Kelly also states he warned the other officers about the gun under the bed. Defendant Kelly asserts that Plaintiff continued reaching toward the bed, and he "drive-stunned" Plaintiff in order to gain his compliance. (Doc. No. 37-5, p. 2, ¶ 9). Defendant Kelly alleges that, although Defendant Martinez was able to place handcuffs on one of Plaintiff's wrists, Plaintiff broke away and tried to reach under the bed. At this point, Defendant Kelly asserts, Defendant Martinez "discharged his taser with one prong entering the [P]laintiff's buttock area and the second entering the hand of Officer Moore." (Id.)

Plaintiff states in his Affidavit[3] that he was in the restroom when the police officers entered the motel room. According to Plaintiff, Defendant Martinez pointed his gun at him and ordered him to place his hands behind his head, and Plaintiff complied with this command. Plaintiff asserts he kneeled down while his hands were behind his head, but the officers still had their guns pointed at him. Plaintiff also asserts that Defendant Moore pushed him forward, and Plaintiff braced himself with his hands to avoid falling too hard onto the floor. Plaintiff contends Defendant Moore then forced his knee in Plaintiff's back and told Plaintiff to put his hands behind his back. Plaintiff alleges he complied with this order. However, Plaintiff alleges, Defendant Jason Garland started hitting him with an asp baton, even though Plaintiff asserts he was lying on his chest with his hands cuffed behind his back. Plaintiff alleges that Defendant

---

[3] The version of events Plaintiff provided the Court in his Affidavit largely is the same as that he provided during his deposition. Thus, the undersigned will not recount Plaintiff's deposition testimony in this regard.

Kelly tased him at least three (3) times and that Defendant Martinez started tasing him as well. Plaintiff also alleges Defendant Moore sprayed him in the face with mace and that he kept getting tased, even though he was unable to move. Plaintiff states that the officers continued tasing him until another person in the motel room hollered at the officers to stop before they killed Plaintiff. (Doc. No. 55-2, pp. 3-7).

During his deposition, Plaintiff and Movants' counsel, Garret Meader, had the following exchange:

> Q: I'm going to refer back to Exhibit D-1 here briefly. It says, "When deputies attempted to take the offender Mr. Hayward into custody, he actively resisted arrest by first failing to comply with verbal commands, then struggling with deputies to not be handcuffed. Then subject actively kicked his legs out striking Deputy Ken Kelly in the chest and thigh area. Deputy Ken Kelly, it says here, used his taser X26 without prongs to gain compliance. Offender continued actively resisting attempting to reach up under the bed in the motel room."
>
> So you understood, when you were charged with this obstruction charge, that that was the conduct that constituted, you know, the charge?
>
> A: Yes, sir.
>
> Q: And you pled guilty to that; correct?
>
> A: To what?
>
> Q: To the obstruction charge.
>
> A: Oh, yes, sir
>
> . . . .
>
> Q: And you're aware that they contend that you, the offender, continued—and I'm just reading from D-1 again here. "Offender continued to resist and was capstunned by Corporal Trevin Moore who was again attempting to prevent the offender to get—or to prevent the offender to get up under the bed. Finally the offender was apprehended when Corporal Jason Garland struck the offender to the thigh area and back with an ASP baton in order to gain compliance." So you're aware of that?

A: Yes, I'm aware of that.

Q: Okay.

A: I mean, I'm aware of—

Q: And that you pled guilty to that charge; correct?

A: I pled guilty to what charge?

Q: The obstruction.

A: Obstruction? Yes, sir.

(Doc. No. 38, pp. 38-39).

If Plaintiff were successful in proving that the officers' use of force against him was unlawful in that it was not justified by Plaintiff's resistance to Defendant Martinez's attempts to arrest him, Plaintiff will have negated the facts supporting his convictions for obstruction and thus, his convictions for obstructing law enforcement officers during the lawful discharge of their duties. Cf. Cummings v. City of Akron, 418 F.3d 676 (6th Cir. 2005) (finding that Heck rule barred excessive force claim where plaintiff had been convicted of assault because successful excessive force claim would negate element of assault charge); Hudson v. Hughes, 98 F.3d 868 (5th Cir. 1996)[4] (holding plaintiff's claim barred by Heck where plaintiff convicted of battery alleged excessive force, which would imply self-defense justification and negate element of battery conviction). Plaintiff contends that allowing his excessive force claim to proceed would not invalidate his convictions for felony obstruction. However, to permit this would invalidate Plaintiff's convictions. Under Plaintiff's version of the facts, he never resisted or obstructed the officers in any way, which is contradictory to the facts supporting Plaintiff's guilty plea

---

[4] The Eleventh Circuit has disagreed with the Fifth Circuit's reasoning in Hudson. See Dyer v. Lee, 488 F.3d 876, 883 n.10 (11th Cir. 2007).

and convictions for the obstruction charges. In addition, Plaintiff has not shown that his obstruction convictions have been invalidated.

The undersigned recognizes that there are instances in which the factual scenario presented in a section 1983 claim for excessive use of force[5] would allow a plaintiff to survive a motion for summary judgment. However, the case before the Court does not present such a scenario. Plaintiff consistently maintains that he complied with officers' orders to place his hands over his head and to stop moving and that he did not resist the officers in any way. In contrast, Movants submitted a report and affidavits which indicate Plaintiff resisted their efforts to execute the warrants against him at every step of the way. Further, Plaintiff pleaded guilty to the obstruction charges based on the facts detailed in this report. Accepting Plaintiff's version of events as true would invalidate his convictions for obstruction of law enforcement officers. This portion of Movants' Motion should be granted.

## II. Deliberate Indifference

Movants assert that Plaintiff cannot show that he suffered from any objectively serious medical condition or that any delay in treatment placed Plaintiff at risk for suffering serious medical harm or increased pain. Movants contend Plaintiff also cannot show that either Defendant Kile or Defendant Griffin were aware that they needed to do

---

[5] An example of such a scenario is found in Dyer. In Dyer, the plaintiff had been handcuffed, and, while cuffed, she kicked an officer in the leg. The plaintiff was then placed in the back of a patrol car and at some point, had moved her cuffed hands to the front of her body due to an arm injury. The plaintiff was pulled out of the patrol car at that point, recuffed with her hands behind her body, and returned to the patrol car. 488 F.3d at 878. The plaintiff contended that the defendants used excessive force against her during the recuffing, including having sprayed her with pepper spray, and that she resisted during the recuffing by kicking the defendants. Id. The plaintiff pleaded no contest to a charge of resisting with violence. The Eleventh Circuit determined that the plaintiff's section 1983 lawsuit was not barred by Heck because the plaintiff's conviction and sentence for resisting with violence "would be able to stand based on [plaintiff's] initial kick." Id. at 882. Thus, permitting the plaintiff's § 1983 lawsuit to survive summary judgment "would not negate the underlying conviction." Id. at 883.

anything in light of Plaintiff's injuries. Movants allege that Plaintiff admitted that he did not speak with Defendant Kile regarding his medical condition and does not know whether Defendant Kile was aware that Plaintiff requested medical care. Movants also allege Plaintiff only alleges that Defendant Griffin told him that she was "too busy to call medical." (Doc. No. 37-8, p. 20). Movants contend Plaintiff had no further interaction with Defendant Griffin while he was housed at the Screven County Jail.

Plaintiff asserts his requests for medical attention went ignored for three (3) weeks after he was arrested. Plaintiff also asserts he collapsed due to shortness of breath and sharp chest pains before he received any medical attention. Plaintiff alleges that Defendants Griffin and Kile knew he had been subjected to the use of force during his arrest and did not provide him with medical attention after he arrived at the jail. Plaintiff contends that Defendant Kile, as the Sheriff, knew or should have known that Plaintiff was subjected to the use of force and was not provided with medical attention after this incident. Plaintiff also contends that Defendant Griffin knew he had been sprayed with mace because she directed another officer to rinse off the mace.

Movants respond that Plaintiff has not placed verifying medical evidence into the record which evidences any serious medical need he may have had. Rather, Movants assert, Plaintiff submitted an affidavit from someone who does not appear to have any medical training and who photographed Plaintiff's injuries. Movants allege they submitted the affidavit of Plaintiff's treating doctor, which indicates that Plaintiff's injury was superficial and that Plaintiff did not require any medical attention after he was tased. Movants assert that this affidavit reveals the doctor's belief that any delay in

treatment did not place Plaintiff at risk for suffering serious medical harm or increased pain.

Plaintiff contends that Defendants Kile and Griffin had a responsibility to provide medical care because force was used against him during his arrest. Plaintiff asserts the taser used against him burned a hole into his skin and that people have died as a result of being tased. Plaintiff also contends that Defendant Kile was the only person at the Screven County Jail who could refer a detainee to medical, and Defendant Kile failed to do so after receiving Plaintiff's medical requests forms.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether prison officials exhibit a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official[s] acted with deliberate indifference to [his] serious medical need"; and 3)

"show that the injury was caused by the defendant[s'] wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327. It is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he deemed appropriate. Harris, 941 F.2d at 1505.

Movants submitted the Affidavit of Sidney Morgan, Jr., the doctor who treated Plaintiff on November 28, 2005; on that date, Plaintiff complained of "chest pain and a small superficial ulcer in his right buttock." (Morgan Aff., ¶ 10). Dr. Morgan stated an EKG was performed, and the EKG "did not reveal any remarkable findings" or any "evidence that [P]laintiff was suffering from any cardiovascular problems." (Id. at ¶ 11). Dr. Morgan also stated he saw a small superficial ulcer on Plaintiff's right buttock which was sustained "as the result of a minor burn to the skin from his being tazed (sic) several weeks earlier." (Id. at ¶ 12). Dr. Morgan found the ulcer was "clean and healing well" and instructed Plaintiff to keep this area clean and to apply dressing. (Id.) Dr. Morgan opined that no other treatment for the ulcer was required. Dr. Morgan also

opined that, even if he had treated Plaintiff shortly after he sustained the taser burn, his treatment recommendation would have been to keep the area clean and dressed because taser burns "are superficial in nature and typically heal themselves over the course of several weeks." (Id. at ¶ 14). Dr. Morgan further opined that any delay in treatment did not put Plaintiff at risk for medical harm or increased pain and that medical treatment was not required immediately after Plaintiff was tased because the burn was "small and superficial." (Id.)

Plaintiff's medical records from Dr. Morgan reveal Plaintiff had an ulcer on his right buttock, which measured one-half inch by one inch. Dr. Morgan noted the ulcer was clean and healing well, and he instructed Plaintiff to wash the area twice daily and to apply a dry dressing. These medical records also reveal that Plaintiff's EKG, blood pressure, and an examination of his heart were normal. (Doc. No. 37-7, p. 5).

During his deposition, Plaintiff stated that he heard Defendant Trevin Moore inform Defendant Griffin that he had been tased and pepper-sprayed upon his arrival at the Screven County Jail, but he "didn't hear [Defendant Griffin's] response." (Doc. No. 38, p. 53). Plaintiff stated that, after he had gotten the pepper spray out of his eyes, he thought he heard Defendant Trevin Moore tell Defendant Griffin he needed to see a doctor. Plaintiff also stated that he asked Defendant Griffin about an hour later if she called medical, and she told him she was busy. Plaintiff also stated he told Defendant Griffin another hour later that he needed to see the doctor, and she again told him she was busy and would call when she got the chance. (Id. at 59). Plaintiff further stated he informed Defendant Griffin that he was "hurting" after being "jumped on and tased" and that she should be willing to call medical on his behalf because he had a "hole in [him]."

AO 72A
(Rev. 8/82)

14

(Id. at 59-60; see also, pp. 93-94). According to Plaintiff's deposition testimony, Griffin told him, "[W]ell, if that's the case, I'm not going to call them or—it was something. I couldn't remember her—she was—her exact words, but that's what she said." (Id. at 60). Plaintiff stated this was the only interaction he had with Defendant Griffin while he was detained at Screven County Jail. As for Defendant Kile, Plaintiff stated he did not have any interaction with him while he was housed at the Screven County Jail. Plaintiff also stated he filled out medical request forms, but he did not know if Defendant Kile received these requests even though these forms were "supposed" to be given to Defendant Kile. (Id. at 61). Plaintiff stated he never spoke with Defendant Kile about his alleged medical condition.

Plaintiff submitted his Affidavit and asserts that Officer Mercer, who booked him into the Screven County Jail, told Defendant Griffin that she needed to call medical because Plaintiff had several bruises and a hole where Defendant Martinez snatched the taser prong from Plaintiff's body. According to Plaintiff, Defendant Griffin said she was busy. (Doc. No. 55-2, p. 10). Plaintiff states he asked Defendant Griffin about 45 minutes later if she would call medical, and she told him she was busy and did not have time. Plaintiff also states he told Defendant Griffin he was in pain and that she knew he had been tased and should be willing to get him some help. Plaintiff also states Defendant Griffin responded, "See, that's why I am not going to call [anyone]." (Id.). Plaintiff asserts he asked to speak with Defendant Kile, but Defendant Griffin ignored him. Plaintiff also submitted copies of Request Slips for Medical Care, dated November 28, 2005 (the day Plaintiff was examined by Dr. Morgan), January 26, 2006, February 23, 2006, and February 26, 2006. (Pl.'s Ex. B).

The evidence before the Court does not reveal that Plaintiff suffered an objectively serious medical need. In addition, there is no evidence which indicates Defendant Kile had subjective knowledge of any of Plaintiff's medical needs. The objective evidence of record (i.e., evidence of Plaintiff's medical records and the affidavit of his treating physician) indicates that Plaintiff's taser burn was healing well three (3) weeks after the incident in question, that any delay in treatment did not put Plaintiff at risk for medical harm or increased pain, and that medical treatment was not required immediately after Plaintiff was tased because the burn was not large or serious in nature. In short, Plaintiff has failed to create a genuine issue of material fact as to whether Defendants Griffin and Kile were deliberately indifferent to his serious medical needs. This portion of Movants' Motion should be granted.

It is unnecessary to address the remaining grounds of Movants' Motion.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Movants' Motion for Summary Judgment be **GRANTED** and that Plaintiff's claims against Defendants Kile, Kelly, Martinez, and Griffin be **DISMISSED**. Plaintiff's Motion to Deny Movants' Motion for Summary Judgment should be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 12th day of June, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE